# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEATHER LYN OCHAB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| (1) DANNY JOE RAY; (2) BIG POPPA'S, | ) |
| LCC; (3) BIG POPPA'S 2, LLC; (4) VICTORY | ) Case No. 6:25-cv-115-JAR |
| FARMS STALLION STATION, INC.; and | ) |
| (5) BP IDABEL, LLC, | ) |
| | ) |
| Defendants. | ) |

## <u>OPINION AND ORDER</u>

Before the Court is Defendants' Corrected Partial Motion to Dismiss Counts 3, 9, and 10 of Plaintiff's Complaint, and Brief in Support. [Dkt. 38]. Plaintiff filed a response in opposition [Dkt. 43], and a supplemental authority in support of Count 10 [Dkt. 46]. By consent of the parties [Dkt. 41], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises complete jurisdiction over this action through and including trial and entry of a final judgment. Having reviewed the pleadings and the applicable law, defendants' motion is **GRANTED** as to Counts 3 and 10 and **DENIED** as to Count 9.

## I.    FACTUAL ALLEGATIONS [1]

From approximately June 2020 through July 2023, plaintiff was employed as defendant Danny Ray's ("Mr. Ray") personal assistant and as an office manager for

---

[1] At this stage, the Court accepts plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

his businesses Big Poppa's, LLC ("Big Poppas"), Big Poppa's 2, LLC ("Big Poppas 2"), and Victory Farms Stallion Station, Inc. ("Victory Farms"). [Dkt. 2, ¶¶ 19, 21, 24, 25]. Plaintiff alleges that, throughout her employment, Mr. Ray fostered a sexually charged work environment, including by making graphic sexual comments to female employees, hiring women based on physical appearance, discouraging the hiring of lesbians, requiring physical "morning hugs," and routinely engaging in sexually explicit workplace discussions. *See* [*id.*, ¶¶ 25-33, 35].

In 2023, Mr. Ray invited Plaintiff to accompany him on a safari trip to Tanzania, purportedly as a reward for her work after other employees declined to attend. Plaintiff alleges she informed Mr. Ray multiple times that the trip was not sexual in nature and that she would not engage in sexual activity with him. *See* [*id.*, ¶¶ 37-40]. Upon arrival in Tanzania, Mr. Ray allegedly informed plaintiff that she would not have a separate tent and required her to sleep in his bed for "safety," although she later learned a separate tent had been available. Plaintiff further alleges that Mr. Ray isolated her, repeatedly pressured her for sex, and, on June 27 while they were in bed, rubbed her leg until she pushed his hand away and told him to stop. [*Id.*, ¶¶ 42-45].

Plaintiff also alleges that, after she continued to refuse Mr. Ray's advances, he canceled her return flight, refused to purchase another, and later shut off the cellular servicer to her company-issued phone while she was traveling home. *See* [*id.*, ¶¶ 45-52]. According to plaintiff, when she returned to Oklahoma, she was no longer employed by defendants. [*Id.*, ¶ 53]. Plaintiff further alleges that defendants

underreported employee income, paid wages partially "under the table," and failed to properly remit payroll and Social Security taxes, resulting in reduced reported earnings and diminished future Social Security benefits. [*Id.*, ¶ 54].

## II.    STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2009)). A claim is plausible when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The Court disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action." *Id.*; *see also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011). The question is whether the complaint alleges facts supporting all elements necessary to relief under the proposed legal theories. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## III.    ANALYSIS

### A.    COUNT 3 | NEGLIGENCE PER SE (SEXUAL BATTERY)

Count 3 asserts negligence per se based on Oklahoma's sexual battery statute, 21 O.S. § 1123(B). Plaintiff alleges that, while in Tanzania, Mr. Ray required her to sleep in his bed and then rubbed her leg until she pushed his hand away and told him to stop, and pleads that this touching was unwanted and nonconsensual.

Negligence per se is a narrow doctrine that substitutes a statutory standard for the common-law duty of reasonable care only when (1) the Legislature intended

3

the statute to define a civil standard of conduct, (2) when the plaintiff's injury is of the type the statute was designed to prevent, and (3) the plaintiff is within the class the statute was meant to protect. *Lockhart v. Loosen*, 1997 OK 103, 943 P.2d 1074, 1078-79, *as corrected* (Aug. 21, 1997). Under *Lockhart*, the threshold inquiry is legislative intent: whether the statute was enacted to create a duty enforceable through negligence principles. *Id*. Negligence per se applies only where a statute establishes a standard governing negligent conduct.

Section 1123(B) does not reflect such intent. By its plain text, the statute criminalizes "intentional touching, mauling or feeling" of another person's intimate areas without consent. 21 O.S. § 1123(B). The statute does not regulate careless or unreasonable conduct; it prohibits deliberate conduct. Its purpose is penal, not regulatory. It defines criminal wrongdoing, not a civil standard of reasonable care. Even if plaintiff falls within the class the statute protects, § 1123 defines intentional criminal conduct rather than a civil negligence standard and therefore cannot serve as the predicate for a negligence per se claim.

*Lockhart* makes clear that courts may not use negligence per se to expand a statute beyond its intended scope or to manufacture civil duties the Legislature did not create. 943 P.2d at 1078-79. Negligence per se operates only when the statute was enacted to protect the class of persons to which the plaintiff belongs and to prevent the type of harm alleged. *Id*. at 1078. That principle controls here. A statute defining intentional sexual battery cannot be converted into a negligence duty without rewriting its operative terms. Plaintiff argues she falls within the protected class

4

because the statute prohibits sexual battery against "any other person," but even when a plaintiff falls within the class protected by a criminal statute, negligence per se applies only when the statute establishes a standard governing negligent behavior. Section 1123(B) does not regulate negligent behavior; it criminalizes intentional touching without consent. Because the statute invoked here defines intentional criminal conduct rather than a negligence-based duty, it cannot serve as the predicate for negligence per se under *Lockhart*.

Plaintiff's own allegations (compelled sleeping arrangements followed by unwanted physical touching until she physically pushed Mr. Ray's hand away) are framed as intentional personal invasion. Those facts, if proven, sound in intentional tort. Oklahoma provides intentional-tort remedies for intentional touching. Count 3's attempt to recast the same alleged conduct as negligence per se does not fit the statutory text, the statutory purpose, or Oklahoma negligence doctrine.

In short, § 1123 defines intentional criminal conduct. Negligence per se applies to negligent conduct. The Court will not collapse that distinction and change the legal character of the alleged wrong. Count 3 therefore fails as a matter of law.

### B.   COUNT 9 | WRONGFUL TERMINATION (BURK TORT)

Count 9 alleges that plaintiff was terminated for refusing Mr. Ray's sexual advances and after she was subjected to unwanted sexual contact. Defendants argue this claim is barred by the Oklahoma Anti-Discrimination Act ("OADA"), which provides the exclusive state-law remedy for employment discrimination. 25 O.S. § 1350(A).

5

The Oklahoma Supreme Court recently clarified the scope of OADA exclusivity in *Baughman v. World Acceptance Corp.*, 2025 OK 57, 576 P.3d 931. There, the Court held that a former employee's claim for intentional infliction of emotional distress was preempted by the OADA where the alleged harm arose entirely from the plaintiff's employment relationship—her supervisor's handling of her medical leave request, FMLA communications, and termination while she was on short-term disability—and characterized those allegations as "quintessential allegations of disability discrimination, squarely within the purview of the OADA." *Id*. ¶ 33-35.

Under *Baughman*, the dispositive inquiry is whether the tort claim arises from the same discriminatory employment conduct governed by the OADA or instead from independent wrongful conduct. The Court emphasized that the OADA's exclusivity addresses harms arising from employment governance (discipline, accommodation decisions, and termination), but does not foreclose claims based on conduct that constitutes an independent personal tort, and claims grounded in such independent wrongful conduct fall outside that exclusivity. *Id*. ¶¶ 33-35, 39.

In explaining that boundary, *Baughman* recognized that some conduct may constitute a personal tort independent of employment discrimination. Relying on *Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995), and *Cunningham v. Skilled Trade Servs., Inc.*, No. CIV-15-803-D, 2015 WL 6442826 (W.D. Okla. Oct. 23, 2015), the Court noted that conduct so extreme and unrelated to the ordinary governance of employment—including sexual assault—may support stand-alone tort claims outside the OADA's remedial scheme. *Baughman*, 576 P.3d at ¶ 39. The plaintiff in

6

*Baughman* did not fall within that category because her allegations concerned employment governance—leave disputes, accommodation decisions, and termination procedures—rather than physical or sexual invasion. *Id*. ¶¶ 36, 39.

The allegations here differ materially from those presented in *Baughman*. Plaintiff does not allege emotional harm arising from workplace policies, disability accommodation decisions, or termination procedures. She alleges harm arising from alleged sexual coercion, isolation in a foreign country, and unwanted physical contact: conduct that *Baughman* itself recognized as qualitatively distinct from employment-based discrimination. The alleged wrong is not discrimination administered through employment governance; it is alleged personal invasion carried out through the abuse of authority over a subordinate employee.

The contrast with *Baughman* is instructive. There, the plaintiff's distress flowed from her supervisor asking when she would return from medical leave, miscommunication about the scope of her FMLA leave, and the circumstances of her termination. *Id*. at ¶ 34. Those are precisely the employment-governance harms the OADA was designed to address. Here, plaintiff's allegations describe coercive sexual conduct, a compelled sleeping arrangement in a remote location, and unwanted physical contact she allegedly had to physically repel. Those harms do not arise from employment governance in the OADA sense, but from conduct that would constitute a personal tort in any setting.

The reasoning in *Cunningham*, which *Baughman* cited approvingly, underscores this point. Sexual assault by a supervisor is "a highly personal violation

7

that goes beyond discrimination." 2015 WL 6442826, at *5. Similarly, in <u>*Brock*</u>, the Ninth Circuit observed that a supervisor's rape and sexual assault of an employee, while sufficient to establish a discrimination claim, "constitutes more than sexual discrimination" and may support an independent tort claim. 64 F.3d at 1423. The Oklahoma Supreme Court acknowledged that same distinction in <u>*Baughman*</u>. 576 P.3d at ¶ 39.

Plaintiff's allegations, taken as true at this stage, fit within that framework. She does not allege discriminatory motive as the mechanism of harm; she alleges coercive sexual conduct—including isolation, repeated pressure for sex, and physical touching she claims she had to rebuff—as the harm itself. The termination she suffered is alleged to be the consequence of refusing that conduct, not the primary tortious wrong.

Whether the alleged conduct ultimately satisfies the elements of a <u>*Burk*</u> tort, including the contravention of a clear mandate of public policy, is a question for a later stage. At the pleading stage, the Court's inquiry is limited to whether the claim is categorically barred by OADA exclusivity. Under the framework articulated in <u>*Baughman*</u>, it is not. Claims grounded in personal invasion rather than employment governance fall outside the OADA's remedial scheme. Accordingly, Count 9 is not barred by OADA exclusivity and states a viable Burk claim under Oklahoma law.

### C.   COUNT 10 | NEGLIGENCE PER SE (FEDERAL INCOME TAX CODE)

Count 10 alleges that defendants violated 26 U.S.C.A. § 6672 by failing to collect, account for, and remit payroll taxes, and that this statutory violation

constitutes negligence per se causing plaintiff financial harm.

Negligence per se substitutes a statutory duty for the common-law duty of reasonable care only where the statute defines a duty owed to a protected class and the harm alleged is the type the statute was designed to prevent. *Busby v. Quail Creek Golf & Country Club*, 1994 OK 63, 885 P.2d 1326, 1329. This Court recently applied that framework in *S.R. v. Tri-County Interlocal Co-Op Indep. Sch. Dist.*, 23-cv-00255-JAR, 2025 U.S. Dist. LEXIS 49832, at *10-12 (E.D. Okla. Mar. 18, 2025), where a negligence per se claim was predicated on the Oklahoma Reporting Act succeeded because the statute imposed mandatory reporting duties on specific actors for the protection of a defined vulnerable class and the alleged harm fell squarely within the statute's protective purpose.

By contrast, 26 U.S.C.A. § 6672 bears none of those characteristics. It is a federal tax penalty provision enforced by the Internal Revenue Service that imposes liability on responsible persons who willfully fail to collect or remit employment taxes. The statute identifies no protected private class, creates no individual entitlement, and authorizes no private enforcement. Under controlling Supreme Court precedent, private rights of action to enforce federal statutes must be created by Congress, and courts may not imply them based on policy considerations or equitable concerns. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Because the Internal Revenue Code provisions at issue exist to protect the public fisc and provide no private enforcement mechanism, they do not establish a civil duty owed to employees and therefore cannot serve as the predicate for a negligence per se claim.

9

Unlike the Oklahoma Reporting Act at issue in *S.R.*, § 6672 is not a public-safety statute. It does not exist to prevent individualized harm; it exists to protect the federal fisc. Its duties are owed to the United States, not to employees, and any downstream economic effect on employees is incidental to the statute's public enforcement purpose. Its remedies are public, not private.

Even applying the negligence-per-se framework articulated in *Busby* and applied in *S.R.*, Count 10 fails at the threshold: § 6672 does not define a private duty and does not protect the class of persons plaintiff seeks to invoke. Plaintiff's theory would require this Court to transform a federal regulatory penalty provision into a private tort regime. That step is foreclosed by *Sandoval* and by the structure of the Internal Revenue Code.

Plaintiff's Notice of Supplemental Authority [Dkt. 46] cites *Ellingburg v. United States*, 607 U.S. ___ (2026), in which the Supreme Court held that restitution under the Mandatory Victims Restitution Act constitutes criminal punishment for purposes of the Ex Post Facto Clause. Plaintiff does not rely on that holding but instead on Justice Thomas's concurrence, which describes the historical distinction between public wrongs and private wrongs and analogizes theft (prosecutable as a public wrong and redressable as a private wrong) to an employer's violation of IRS payroll duties.

The argument fails for three reasons. First, a concurring opinion does not establish binding precedent. *Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Thomas wrote to critique the Court's modern Ex Post Facto framework, not to create

10

a new basis for private tort liability under federal tax law. Second, the public/private wrong taxonomy is a descriptive historical framework, not a source of enforceable private rights. Under *Sandoval*, private rights of action must be created by Congress, and the mere existence of a statutory duty, even one that incidentally harms individuals, does not imply a private cause of action. *Ellingburg* does not cite, address, or qualify *Sandoval*. Third, the analogy breaks down on its own terms: theft directly violates an identifiable private right—the owner's property—whereas § 6672's primary duty runs to the Treasury, not to employees. Plaintiff's alleged harm (reduced Social Security credits and out-of-pocket remediation costs) is downstream and incidental to the statute's public enforcement purpose. That is not the structure of a privately held wrong that Justice Thomas's framework places in the hands of a private litigant. The IRS enforces § 6672 on behalf of the public fisc; it does not stand in for a private suit that plaintiff could have brought independently. Accordingly, Count 10 fails as a matter of law.

## IV.  CONCLUSION

These rulings address the structure of the law and the role of this Court, not the weight or credibility of plaintiff's allegations. Counts 3 and 10 fail not because the alleged conduct is trivial, but because the legal theories asserted would require the Court to transform statutes into causes of action the Legislature and Congress did not create. 21 O.S. § 1123 defines intentional criminal conduct; it does not supply a negligence duty. 26 U.S.C.A. § 6672 creates a public tax enforcement mechanism; it does not establish a private tort regime.

The Court does not expand statutory law by analogy, equity, or narrative force. It applies the remedies the law actually provides. Where the Legislature has spoken in criminal terms, the Court does not rewrite those commands into civil negligence. Where Congress has created a comprehensive regulatory scheme, the Court does not graft private enforcement onto it. The Court's task is not to enlarge the remedies statutes do not provide, but to apply the ones the law actually gives.

Count 9 proceeds because Oklahoma law recognizes that some claims arise not from workplace governance but from personal invasion and coercion. Counts 3 and 10 do not proceed because they require the Court to cross the line from adjudication into invention. The Court's role is to apply the law as written, not to improve it, expand it, or enforce the ambitions of the pleadings.

Accordingly, Defendants' Corrected Partial Motion to Dismiss [Dkt. 38] is **GRANTED in part** and **DENIED in part**.

IT IS THEREFORE ORDERED that Count 3 is dismissed.

IT IS FURTHER ORDERED that Count 9 remains as filed.

IT IS FURTHER ORDERED that Count 10 is dismissed.

DATED on this 27th day of April, 2026.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

12